UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  CARTER P. REESE and                  :
         SARAH C. REESE,                      :    Case No. 12-19376REF
              Debtors-in-Possession           :    Chapter 11

# STATEMENT SUPPORTING ORDER DATED NOVEMBER 2, 2012

## I. INTRODUCTION

On October 2, 2012, Debtors, Carter and Sarah Reese, initiated this Chapter 11 proceeding by filing their petition. I immediately issued an Order pursuant to Section 105(d) of the Bankruptcy Code, 11 U.S.C. § 105(d), scheduling a status conference for me to examine Debtors to determine (1) what led to this filing, (2) the current status of Debtors, and (3) how the Debtors intend to reorganize. Both Debtors were present at then Chapter 11 status conference and each had individual counsel. Two of Debtors' creditor banks were present through their counsel. I started the status conference by disclosing certain contacts that I have had with Debtors over the years and announced that I did not believe those prior contacts warranted my recusal from presiding over this proceeding. I invited any party, however, to inform the Chief Deputy Clerk anonymously to request that

[1]

I recuse myself. One of the parties did so and I scheduled and conducted a hearing on my recusal on November 2, 2012, at which the parties were free to advocate their positions. Counsel for one of the creditors acknowledged that he had contacted the Clerk about my possible recusal. This Statement constitutes my recitation of my prior contacts with Debtors and my determination and conclusion that I will not recuse myself from this matter. This Statement supports the Order entered on November 2, 2012.

## II. FACTUAL BACKGROUND

To the best of my recollection, my prior contacts with Debtors follow:[1]

(1.) I met Debtors for the first time sometime in the late 1990s or early 2000s;

(2.) I was aware at some time in the late 1990s or early 2000s that Debtors had a business of assisting foreign students in the admission process for secondary schools and colleges in the United States;[2]

(3.) At some time in the late 1990s or early 2000s, I visited Debtors' home at 84 Grandview Blvd., Wyomissing Hills, Berks County, Pennsylvania, for a social event (I have no recollection of any details of the event, i.e., whether it was a sit-down dinner, a reception, or some other type of event);[3]

(4.) Debtors have not attended any social events at my home;

(5.) During my visit to Debtors' home, I toured an upper floor and saw a display of antique toys shown in plexiglass-like cases (I do not recall any specifics of any of the displays);

(6.) During the tour of the antique toys at Debtors' home, no person other than, perhaps, Mr. Reese accompanied us to answer questions about the toys (I recall nothing in particular about any discussion with Mr.

---

[1] I do not warrant the accuracy of any of my recollections of contacts with Debtors. I have recited this summary of contacts solely to the best of my memory at this time, including answering some questions by counsel at the hearing on November 2, 2012.

[2] Mr. Reese had been involved in admissions or some other administrative post at The Hill School in Pottstown, Pennsylvania, before leaving to form his own placement business with Mrs. Reese. Both my son and my daughter attended The Hill School, but Debtors had nothing to do with either of them in their admissions process.

[3] This event is the only instance in which I visited Debtors at their home.

Reese or any other person about the toys, other than my expression of admiration for the collection in general);[4]

(7.) Sometime in the late 1970s or early 1980s, I had stayed overnight at 84 Grandview Blvd., when it was owned by its previous owners, who were my friends (I do not recall any specifics of the inside of 84 Grandview Blvd. and recall specifically only that it has an out building/garage in which one of my friends lived and that it has a basketball court in the driveway, where I played basketball on numerous occasions);[5]

(8.) Over the past 10 - 12 years, I have seen Debtors a half dozen times more or less at social or institutional charitable events throughout Berks County, at which our contacts/conversations were nothing more than exchanging pleasantries; and

(9.) At some time in the past two or three years, my wife and Mrs. Reese worked together to organize a birthday party for one of their mutual friends (who is also a friend of mine).

---

[4] I received no information or description of the value of any one, of any sub-collection, or of all of Debtors' antique toys.

[5] Debtors' home at 84 Grandview Blvd. is only a few hundred yards from my home.

# III. DISCUSSION

## A. 28 U.S.C. Section 455

Federal Rule of Bankruptcy Procedure, Rule 5004(a)[6], states that a bankruptcy judge shall be governed by 28 U.S.C. § 455 in matters of disqualification. Section 455 sets forth the statutory requirements for the recusal of a United States Judge from hearing certain litigation.[7] Only two of the sub-

---

[6] Federal Rule of Bankruptcy Procedure, Rule 5004(a) states:

> (a) Disqualification of judge -
>
> A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

[7] 28 U.S.C. § 455 provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
>
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

[5]

sections of Section 455 – Section 455(a) and Section 455(b)(1) -- pertain to this matter. Sub-sections 455(b)(2) - (5) do not apply to this matter. First, Section 455(a) provides:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. §455(a). Second, Section 455(b)(1) provides:

> (b) He shall also disqualify himself in the following circumstances: (1)Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

28 U.S.C. §455(b)(1). As a United States Judge, I am also guided by the Code of Conduct for United States Judges, although the Code of Conduct neither expands upon nor extends the statutory prohibitions of Section 455.

---

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

    (ii) Is acting as a lawyer in the proceeding;

    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

[6]

"To invoke these provisions of Section 455, there must be a factual and reasonable basis to question the court's impartiality." United States v. Martorano, Crim. No. 82-11, 1987 WL 13677, at *3 (E.D. Pa. July 13, 1987). Furthermore, application of Section 455 involves a two-step analysis:

> First, a charge of partiality must be supported by a factual basis. Although public confidence may be as much shaken by publicized inferences of bias that are false as by those that are true, a judge considering whether to disqualify himself must ignore rumors, innuendos, and erroneous information published as fact in the newspapers. To find otherwise would allow an irresponsible, vindictive or self-interested press informant and/or an irresponsible, misinformed or careless reporter to control the choice of judge. Second, disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias. See H. Rep. No. 1453, 1974 U.S. Code Cong. & Admin.News, supra, at 6355. This restricted mandate to disqualify is calculated to induce a judge to tread the narrow path between timidity and tenacity.

In re United States, 666 F.2d 690, 695 (1st Cir. 1981) (footnote and citations omitted).

Therefore, application of Sub-Sections 455(a) and (b)(1) must involve a determination of bias from the objective perspective of a reasonable person rather than from the perspective of the movant. See, e.g., Martorano, 1987 WL 13677, at *3; Barna v. Haas (In re Haas), 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003).

"[T]he judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990).

Moreover, a judge "has a <u>duty not to recuse</u> if disqualification is not appropriate." Martorano, 1987 WL 13677, at *3 (emphasis added); accord, e.g., United States v. Brant, Crim. A. Nos. 89-111-01, 89-111-02, 1995 WL 118214, at *1 (E.D. Pa. March 10, 1995); In re Womack, 253 B.R. 245, 246 (Bankr. E.D. Ark. 2000). Although the language of Section 455 is clear, the legislative history relating to its enactment provides further interpretative assistance:

> No judge, of course, has a duty to sit where his impartiality might be reasonably questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.
>
> At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355.

"[C]ourts must exercise great care in considering motions for recusal so as to discourage their use for purposes of judge shopping or delay." Haas, 292 B.R. at 175.

Section 455(b)(1) sets forth an explicit statement of circumstances that mandate recusal of a judge. A Seventh Circuit decision describes the working test for determining recusal/disqualification as "whether a reasonable person would be convinced the judge was biased." Brokaw v Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000). The court further explained that recusal "is required only if actual bias or prejudice is proved by compelling evidence." Id. In Easley v University of Michigan Board of Regents, 906 F.2d 1143 (6th Cir. 1990), a judge serving on a law school committee was not required to recuse himself from a discrimination suit against the law school because his position did not give him any knowledge of the events at issue in the underlying discrimination litigation against the school.

Section 455(a), on the other hand, does not set forth specific instances in which I should recuse myself, as Section 455(b) prescribes. Sub-section (a) is more generalized and requires an objective view when considering recusal. The question for me to answer is not whether I believe that I am biased, prejudiced, or impartial, but whether my "impartiality might be reasonably questioned." In the Third Circuit, this reasonable person standard has been interpreted to mean: "[A] reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 266 (3d Cir. 1995) (quoting and relying upon prior Third Circuit decisions).

[9]

Other courts' decisions have further refined the standard. The hypothetical reasonable person is not generally considered to be a judge because judges may have become inured to certain perceived conflicts that might genuinely offend lay persons. See United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998). The hypothetical observer, however, "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." Id. A judge is obliged to consider "how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." In re Mason, 916 F.2d 384, 386 (7th Cir. 1990).

Section 455(a) can be broken into thirteen bases for recusal, seven that are frequently alleged but rarely require recusal and six in which recusal may be more likely to be granted.[8] Many of these thirteen bases do not apply at all to the matter at hand, but I will mention them. The seven types of allegations that do not generally warrant recusal can be summarized as follows: (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicions, opinions, and similar non-factual matters; (2) the judge's prior statements on a point of law or policy; (3) prior rulings in the same or a related proceeding; (4) familiarity with the parties or the legal theories presented; (5) baseless personal attacks on the judge; (6) reports in

---

[8] My analysis of Section 455, is derived in part from a booklet provided to federal judges explaining numerous ethical issues, including recusal. See Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144., Federal Judicial Center (2002). See also Judicial Disqualification: An Analysis of Federal Law, Federal Judicial Center (2d ed. 2010).

the media about what the judge believes, says, or does; and (7) threats or attempts to intimidate the judge. Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). Nothing in this dispute appears to rely in any way on numbers (1) - (3) or (5) - (7) above; but number (4) is at issue.

Judges often cannot possibly avoid having some acquaintance with the parties or law firms that might appear before them, which is the basis of disqualifying reason (4). Direct and personal social, business, or other relationships and previous contacts with parties or counsel are generally rejected as the basis for recusal. See MacDraw, Inc., v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 963 (2d Cir. 1998); United States v. Morrison, 153 F.3d 34, 47-49 (2d Cir. 1998). These disqualifying reasons will be further examined below.

The six types of recusal allegations that get more traction with the courts are: (8) Close personal or professional relationships with attorneys or others; (9) public comments or outside activities; (10) ex parte contacts; (11) involvement pertaining to a guilty plea in criminal cases; (12) the judge taking personal offense at something done or said by the parties or counsel; and (13) miscellaneous allegations of some conflict that faces the judge personally and directly. Again, this dispute does not rely on numbers (9), (10), (11), (12), or (13), but number (8) is at issue.

As mentioned above, a judge's friendship with one or more of the attorneys, witnesses, or parties in a matter, which is disqualifying reason (8), does not ordinarily require recusal.  When a judge's close personal friend, however, was a key witness in a proceeding, when the judge remarked that he would "bend over backwards to prove he lacked favoritism" toward the witness, and when an adverse decision might jeopardize the judge's wife's friendship with a party's wife, the judge should have recused himself.  United States v. Kelly, 888 F.2d 732, 744-47 (11th Cir. 1989).  The Eleventh Circuit Court also examined a matter in which a judge's law clerk's father (who had himself been a law clerk for the judge) was a partner in a law firm representing one of the parties before the judge and the law clerk had actually conducted a hearing with counsel in the judge's absence.  Parker v. Connors Steel Co., 855 F.2d 1510 (11th Cir. 1988).  Recusal might have appeared even more appropriate because the judge openly credited his law clerk in his written opinions.  Even with these close and overlapping personal and direct relationships, however, the Eleventh Circuit found the judge's failure to recuse himself to be harmless error in Parker.

Counsel for one of the creditors acknowledged at the hearing on November 2, 2012, that he had contacted the Clerk about my recusal because of a single issue.  The antique toy collection allegedly secured the debt owed to his creditor client.  His client and he were concerned, based upon my passing

[12]

description of my prior contacts with Debtors at the October 11, 2012 Chapter 11 status conference, that I had seen the toy collection at Debtors' home. He was concerned that some expert or other person may have described the toys in detail and ascribed some value to some or all of them. At the November 2, 2012 hearing, I described my failure to recall any person other than perhaps Mr. Reese, accompanying us in the tour of the toys. Even if Mr. Reese had accompanied us, nevertheless, I recall no discussion or description of any toy in particular or of the collection as a whole.

## B. Application of Section 455 to the Present Grounds for Recusal

The two categories of grounds for recusal discussed above under Section 455(a) obviously come down to disqualifying reasons (4) and (8) --- familiarity (with the Debtors and their assets) and friendship --- which are effectively the same thing, varying only in the degree of the judge's familiarity and friendship with either counsel or the parties. I will therefore regard the request for my recusal as being based entirely upon my prior relationship with and knowledge of Debtors and the antique toy collection.

As discussed above, the decisions in MacDraw, 157 F.3d at 963, and Morrison, 153 F.3d at 47-49, reject even direct and personal social or business relationships with parties or counsel as the basis for recusal (whether positive or

negative). Furthermore, MacDraw and Morrison speak to the judge's personal and direct prior and existing relationships, not some attenuated or assumed relationship. In Kelly, 888 F.2d at 744-47, and Parker, 855 F.2d at 1523-28, the court determined that the direct and personal nature of the judge's relationships should have led to recusal (but even the Parker court found that the very close, personal relationship, although possibly justifying recusal, was ultimately harmless error).

In considering my relationship with the Debtors, the decision in Murphy, 768 F.2d at 1537, supports the principle that a judge should recuse himself only if the friendship between the judge and the attorney was particularly close and personal (their families were about to take a joint vacation). Id. at 1538. I have no close personal relationship whatsoever with the Debtors.

That leaves the concern that I might have special, inside knowledge of Debtors' home or their antique toy collection. I noted above and I say again that I have no particular knowledge about the home at 84 Grandview Blvd. Even more certainly, I can say that I have no idea whatsoever about the nature, provenance, rarity, or value of any toy individually or of the collection altogether. Without demeaning this case or its parties, I can easily echo John Banner (Sergeant Hans

Schultz) in the long running television sit-com Hogan's Heroes:[9] "I know nothing! NOTHING!"

As far as the particular elements of Section 455(b)(1) are concerned, I can find nothing whatsoever that might show (1) actual bias or prejudice or (2) special or otherwise relevant knowledge about any of Debtors assets. Brokaw, 235 F.3d at 1025. I have no personal bias or prejudice concerning a party and I have no personal knowledge of any disputed evidentiary facts or values. No reasonable person could believe that I was prejudiced or biased one way or another.

In conclusion, I find that none of my contacts with Debtors over the past 15 years or so requires me to disqualify or recuse myself from involvement in this proceeding. I also find and conclude that my scant knowledge about the antique toy collection is sufficiently attenuated that I need not recuse myself on the basis of knowing anything about its value.[10] Beyond being required to recuse or disqualify myself, of course, is my ability and power to do so voluntarily. I believe that any decision to recuse myself, even voluntarily, based upon my contacts with Debtors and their assets would be wholly inappropriate and improper.

---

[9] Hogan's Heroes presented the comedic exploits of Allied POW's held in Luftwaffe Stalag 13 and ran for 168 episodes from 1965 through 1971 on the CBS television network.

[10] Counsel for the creditor who had the toy collection as collateral for his client's loan announced his satisfaction that I should not recuse myself.

[15]

# IV. CONCLUSION

For the foregoing reasons, I enter this Statement in support of my November 2, 2012 written Order, in which I declined to recuse myself from hearing and presiding over this Chapter 11 proceeding.

BY THE COURT

_____
RICHARD E. FEHLING
United States Bankruptcy Judge

DATE: November 6, 2012